OPINION
{¶ 1} Appellant, Paul E. DelManzo, appeals his sentence following his guilty plea to aggravated vehicular homicide and operation of a vehicle under the influence of alcohol. At issue is whether the trial court erred in imposing the maximum sentence and whether his sentence was inconsistent. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} On March 2, 2008, at about 7:30 p.m., appellant took his girlfriend Denise Becker-Hill to a party at the Willoughby Brewing Company. While there, according to appellant, he had a few drinks; however, he admitted he was the designated driver that night. They stayed until about 10:30 p.m., at which time appellant began driving Denise home in his 2004 Chevrolet Trail Blazer. While driving eastbound on Interstate-90 at speeds in excess of 80 m.p.h., appellant drove through a construction site and caused his vehicle to roll over. Denise was thrown from the vehicle and sustained fatal injuries. She was subsequently declared dead at Lake East Hospital after rescue efforts proved unsuccessful. Responding police officers determined appellant was driving while impaired with a blood-alcohol level of .154.
 {¶ 3} The Lake County Grand Jury returned an indictment against appellant charging him with aggravated vehicular homicide while operating a vehicle under the influence of alcohol, a felony of the second degree, in violation of R.C. 2903.06 (A)(1)(a) (Count One); aggravated vehicular homicide caused by reckless driving, a felony of the third degree, in violation of R.C. 2903.06(A)(2)(a) (Count Two); operating a vehicle under the influence of alcohol ("OVI"), a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a) (Count Three); and operating a vehicle with a prohibited concentration of alcohol in his blood ("BAC"), a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(b) (Count Four).
 {¶ 4} On October 10, 2007, the trial court held a change-of-plea hearing, at which the parties spread their plea bargain on the record. Appellant agreed to plead guilty to Counts Two and Four as charged, and in exchange the remaining two counts *Page 3 
would be dismissed. Further, the parties agreed that at sentencing, appellant would ask the court to sentence him to a term of imprisonment of not less than two and one-half years and the state would be free to ask for whatever sentence it believed was appropriate up to the maximum sentence of five and one-half years.
 {¶ 5} After advising appellant of his rights as outlined under Crim. R. 11, the court advised him that a guilty plea to Count Two, aggravated vehicular homicide, a felony of the third degree, would expose him to a term of imprisonment of one, two, three, four, or five years, and that a guilty plea to Count Four, BAC, would expose him to up to six months in prison. The court also advised him that in this case, the two terms could be ordered to be served consecutively. Appellant told the judge he understood that under his proposed guilty plea, he could be sentenced to a potential maximum sentence of five and one-half years, and that he had no questions about the potential sentence he faced by pleading guilty.
 {¶ 6} Appellant orally entered his guilty plea to Counts Two and Four. He then signed a written guilty plea, which also advised him of his constitutional rights and the potential sentence which could be imposed on him following his guilty plea. His attorney told the court that he had reviewed the written guilty plea with appellant. He said, "we read over every single word of it." Appellant said he understood everything set forth in that document. The court found that appellant had made a knowing, voluntary, and intelligent waiver of his rights, and understood the nature of the charges and the potential sentence that could be imposed, and then accepted appellant's guilty *Page 4 
plea. On the state's recommendation, the court dismissed Counts One and Three, and referred the case for a pre-sentence report.
 {¶ 7} A sentencing hearing was held on November 29, 2007. Appellant's attorney asked the court to consider imposing a sentence of two and one-half years in prison. Appellant told the court he was sorry for his crimes.
 {¶ 8} The prosecutor advised the court that appellant had a significant felony record. He had been sentenced to prison on two prior occasions in 1986 and 1988 following his conviction on multiple felonies. He had also been found to be a probation violator. Appellant also had four prior speeding convictions and had previously been convicted of failure to control his vehicle. The prosecutor asked the court to impose the maximum sentence.
 {¶ 9} The victim's mother Carol Becker told the judge that Denise was a nurse and veterinary technician, and was 38 years old when she died. She had two young children, ages five and nine, who miss their mother desperately. She said appellant was the designated driver that night, and that his decision to drive while he had been drinking caused her to lose her daughter and caused her two grandchildren to lose their mother. She said Denise and her two daughters lived with her in Chardon and she will now have to raise them alone. She said appellant's impaired driving caused her to experience her worst nightmare: having to bury her own child.
 {¶ 10} Denise's best friend and fellow nurse Kathleen Holian told the court that appellant, who was a medical technician at Lake East Hospital where she and Denise worked, often drove after he had been drinking. Appellant was obsessed with Denise *Page 5 
and would not leave her alone. She was trying to distance herself from him without hurting his feelings. After Denise had been killed, Kathleen learned that appellant would give shots of tequila to her 14-year old son from a bottle he kept in his car. Appellant would also bring alcohol to Denise's home, although she had told him not to because her father was a recovering alcoholic. One night Kathleen told appellant that if he continues to drive drunk, he was going to kill someone. Appellant laughed and said that he drove better drunk than other people drive sober. Appellant would get drunk even when he was on call as a medical technician. Appellant had told her son that he smoked marijuana, but not to tell Denise or Kathleen because they would not understand. She said appellant shattered the lives of Denise's children and her parents. She said Denise's two children will never know their mother because of appellant's impaired driving, and she asked the court to impose the maximum sentence.
 {¶ 11} The trial court stated on the record and in its judgment entry that it had considered the pre-sentence report, the psychological and drug and alcohol evaluation of Dr. Jeffrey Rindsberg; the victim impact statement; each letter submitted on behalf of appellant; appellant's sentencing memorandum; the statements of appellant's attorney, his family members, and appellant himself; the comments and recommendation of the state; the statements made in court on behalf of the victim; the facts, circumstances, and nature of the offense; the purposes and principles of felony sentencing under R.C. 2929.11; and the seriousness and recidivism factors of R.C. 2929.12.
 {¶ 12} Under the factors indicating appellant's conduct was more serious than conduct normally constituting the offense, the court noted the victim's family suffered *Page 6 
serious psychological harm. Further, appellant was the designated driver. The victim placed her trust in him, and appellant breached that trust by driving after he had been drinking. The court noted that appellant's blood-alcohol level of .154 was almost twice the legal limit, so he was impaired while he was driving. Appellant was also driving at excessive speeds at the time of the offense.
 {¶ 13} The court considered counsel's argument that, although appellant was reckless at the time, he was driving through a construction site when he caused his vehicle to roll over, and the temporary lane "may" have been confusing to him. The court noted this does not make appellant's conduct less serious because construction areas on the road are not unusual, and drivers need to be lucid and not alcohol-impaired when driving in such zones. The court noted there were thousands of other drivers who went through that zone that night under the same conditions who were able to maneuver through it without crashing their vehicles. The court noted there were no less serious factors pertinent in this case.
 {¶ 14} In considering the factors making recidivism more likely, the court noted appellant has a history of juvenile delinquency adjudications and had been committed to the Department of Youth Services. As an adult, in the 1980s he was convicted of multiple theft-related felonies and had served two prison terms. In that period he was also found guilty of being a probation violator twice. While the court noted appellant was again convicted in 1996 for theft, it noted he has led a law-abiding life for a significant number of years. The court also noted appellant showed genuine remorse. *Page 7 
 {¶ 15} The trial court sentenced appellant to five years on his guilty plea to aggravated vehicular homicide and six months on his plea to BAC, the two sentences to be served consecutively. His driver's license was suspended for 12 years and the court imposed a fine of $250. Appellant did not object to any aspect of his sentence. Appellant timely appeals the trial court's sentence, asserting two assignments of error. For his first assigned error, appellant contends:
 {¶ 16} "THE TRIAL COURT ERRED BY SENTENCING THE DEFENDANT-APPELLANT TO THE MAXIMUM TERM OF IMPRISONMENT."
 {¶ 17} Under this assigned error, appellant argues the trial court erred in not placing appropriate emphasis on certain circumstances when it considered the seriousness and recidivism factors set forth at R.C. 2929.12. Appellant concedes the trial court considered these factors and analyzed the circumstances at issue when considering the statutory factors, but argues for the first time on appeal that the court did not give them appropriate "weight." Appellant argues the court should have given more weight to appellant's remorse and the fact that, according to his attorney, he was driving through a possibly confusing construction zone when he crashed his vehicle and less weight to appellant's criminal history. However, the trial court did note appellant's genuine remorse and commented that the bulk of appellant's crimes occurred twenty years ago and that he had lived a law-abiding life for a significant period.
 {¶ 18} Initially, we note that at no time during his sentencing hearing did appellant object to the trial court's analysis of the facts and circumstances of this case under the seriousness and recidivism factors or to the court's imposition of the *Page 8 
maximum sentence. Appellant was in court when the court orally analyzed these facts and circumstances and sentenced him. He was therefore fully aware of the weight, or lack thereof, the trial court chose to attribute to them in imposing its sentence. By failing to object or otherwise bring this perceived error to the trial court's attention, appellant waived the right to assert any alleged resulting error on appeal. As the Supreme Court of Ohio has held, "[w]aiver is the intentional relinquishment or abandonment of a right, and waiver of a right `cannot form the basis of any claimed error under Crim. R. 52(B).'" State v.Payne, 114 Ohio St.3d 502, 506, 2007-Ohio-4642, quoting State v.McKee, 91 Ohio St.3d 292, 299, 2001-Ohio-41.
 {¶ 19} However, even if the issue had been preserved for appeal, there would have been no error. Because, as appellant concedes, the trial court expressly considered the seriousness and recidivism factors under R.C. 2929.12, the trial court did not err in imposing its sentence. InState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio, in striking down parts of Ohio's sentencing scheme, held that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Post-Foster, "appellate courts must apply a two-step approach [in reviewing a felony sentence]. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the *Page 9 
trial court's decision shall be reviewed under an abuse-of-discretion standard." State v. Kalish, Slip Opinion No. 2008-Ohio-4219, at ¶ 4.
 {¶ 20} An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.,66 Ohio St.3d 619, 621, 1993-Ohio-122.
 {¶ 21} In Foster, the Supreme Court of Ohio also held that two statutory sections, R.C. 2929.11 and R.C. 2929.12, "apply as a general guide for every sentencing." Foster, supra, at 12. In sentencing an offender for a felony conviction, pursuant to R.C. 2929.11(A), a trial court must be guided by the overriding purposes of felony sentencing, which are "to protect the public from future crime by the offender and others and to punish the offender." To achieve these two purposes, the court must consider the need for incapacitating the offender, deterring him from future crime, rehabilitating the offender, and making restitution to the victim. Id. R.C. 2929.11(B) provides that a felony sentence must be reasonably calculated to achieve the two purposes set forth under R.C. 2929.11(A), commensurate with and not demeaning to the seriousness of the crime and its impact on the victim. The court must also consider the seriousness and recidivism factors under R.C. 2929.12.
 {¶ 22} Pursuant to Foster, "[t]he court is merely to `consider' the statutory factors." Id., at 14. Thus, "in exercising its discretion, a court is merely required to *Page 10 
`consider' the purposes of sentencing in R.C. 2929.11 and the statutory guidelines and factors set forth in R.C. 2929.12." Lloyd, supra, at ¶ 44.
 {¶ 23} In the case sub judice, the trial court indicated on the record and in its sentencing entry that it had considered the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. While appellant may not agree with the emphasis placed by the trial court on the circumstances of this case, he cannot dispute the court considered the statutory factors. A trial court is not required to give any particular weight or emphasis to a given set of circumstances; it is merely required to consider the statutory factors in exercising its discretion.
 {¶ 24} Appellant pled guilty to aggravated vehicular homicide, a felony of the third degree. He was subject to a prison term of one, two, three, four, or five years. He also pled guilty to BAC, a misdemeanor of the first degree, for which he was subject to an additional prison term of up to six months. Appellant's sentence of five and one-half years was thus within the statutory range for these offenses. Because the trial court sentenced appellant within the statutory range and considered the statutory purposes and guidelines of felony sentencing and the seriousness and recidivism factors, we hold the trial court's sentence was not clearly and convincingly contrary to law. Further, the trial court did not abuse its discretion in sentencing appellant.
 {¶ 25} We do not agree with appellant's suggestion that the trial court was required to make findings under R.C. 2929.12 that were supported by the record. First, we note the court did not make "findings;" rather, it considered the seriousness and *Page 11 
recidivism factors of R.C. 2929.12. Moreover, in Foster, the Court held that trial courts are not required to make findings under R.C. 2929.11
and 2929.12; they are merely required to "consider" the sentencing guidelines and factors set forth in those two statutes. Foster, supra, at 12-14.
 {¶ 26} Appellant's first assignment of error is not well taken.
 {¶ 27} For his second assignment of error, appellant states:
 {¶ 28} "THE TRIAL COURT VIOLATED DEFENDANT-APPELLANT'S RIGHTS TO EQUAL PROTECTION AND DUE PROCESS OF LAW UNDER THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND UNDER SECTIONS 2, 10 AND 16 OF THE OHIO CONSTITUTION WHEN IT SENTENCED HIM CONTRARY TO R.C. 2929.11(B).
 {¶ 29} Under his second assignment of error, appellant argues the trial court failed to consider whether his sentence was consistent with sentences imposed for similar crimes committed by similar offenders, in violation of R.C. 2929.11(B).
 {¶ 30} As noted supra, pursuant to Foster, a trial court is vested with full discretion to impose a sentence within the statutory range. Further, pursuant to Foster, trial courts must still follow two sections of Ohio's sentencing scheme under S.B. 2 in sentencing. R.C.2929.11 and R.C. 2929.12 apply as a general guide for every sentencing.
 {¶ 31} R.C. 2929.11(B) provides that a felony sentence must be reasonably calculated to achieve the purposes set forth under R.C. 2929.11(A), commensurate with *Page 12 
and not demeaning to the seriousness of the crime and its impact on the victim, and consistent with sentences imposed for similar crimescommitted by similar offenders.
 {¶ 32} R.C. 2929.11(B) requires consistency when applying Ohio's sentencing guidelines. However, this court has repeatedly held that sentencing consistency is not derived from the trial court's comparison of the current case to prior sentences for similar offenders and similar offenses. State v. Spellman, 160 Ohio App.3d 718, 722, 2005-Ohio-2065. Rather, it is the trial court's proper application of the statutory sentencing guidelines that ensures consistency. State v. Swiderski, 11th Dist. No. 2004-L-112, 2005-Ohio-6705, at ¶ 58. Thus, in order to show a sentence is inconsistent, a defendant must show the trial court failed to properly consider the statutory factors and guidelines.
 {¶ 33} Based upon the precedent established by this court, appellant's position that consistency in a sentence is determined by a numerical comparison to other sentences for similar crimes lacks merit. Simply because appellant's sentence was not identical to sentences in other cases does not imply that his sentence was inconsistent with sentences of other similarly situated offenders.
 {¶ 34} The trial court stated on the record that it considered the purposes of felony sentencing under R.C. 2929.11, which include the requirement that sentences imposed be consistent. The court also considered the seriousness and recidivism factors of R.C. 2929.12. The court considered several pertinent factors in this case that made appellant's conduct more serious than conduct normally constituting the offense. The court did not find any factors were present that made his conduct less serious. *Page 13 
Further, the court noted several factors it considered as indicating a likelihood of recidivism. Under factors indicating appellant was less likely to reoffend, the court noted appellant had for a significant period led a law-abiding life and showed genuine remorse.
 {¶ 35} The court concluded that, after weighing these factors, a term of imprisonment was consistent with the purposes and principles of sentencing, and that appellant was not amenable to any available community control sanction.
 {¶ 36} Upon review of the record, we hold that appellant's sentence of five years on Count 2 and six months on Count 4 are within the statutory range of penalties for the offenses to which he pled guilty. Moreover, the trial court properly applied and considered the statutory sentencing factors before imposing appellant's sentence. The court's sentencing thus met the consistency requirement of R.C. 2929.11(B).
 {¶ 37} While we do not believe that a numerical comparison to other sentences is dispositive of the issue of consistency, we note the other cases cited by appellant in support of his argument in fact support our holding that appellant's sentence was consistent. In State v.Tomkalski, 11th Dist. No. 2003-L-097, 2004-Ohio-5624, the trial court imposed a five-year prison term for one count of aggravated vehicular homicide and a six-month prison term for BAC. In State v. Hough, 11th Dist. No. 2001-T-0009, 2002-Ohio-2942, the trial court imposed a sentence of three years on each of two counts of aggravated vehicular homicide, to be served consecutively, for a total of six years. Finally, in State v. Kalish, 11th Dist. No. 2006-L-093, 2007-Ohio-3850, affirmed, *Page 14 2008-Ohio-4912, the trial court imposed a five-year prison term for one count of aggravated vehicular homicide.
 {¶ 38} We emphasize that a strictly numerical comparison says nothing about whether in other cases, factors existed which made the defendant's conduct more or less serious or whether factors existed which made it likely or not likely the defendant would reoffend. In the case sub judice, we are struck by the devastating impact appellant's crimes had on so many people, including the victim's two young children, who are now left without a mother because of the admittedly reckless acts of appellant. Appellant shattered the lives of those children and the victim's parents. Further, appellant had a significant prior history of felony convictions, which resulted in two actual confinements in prison, multiple probation violations, and a reported history of impaired driving.
 {¶ 39} Appellant's second assignment of error is without merit.
 {¶ 40} For the reasons stated in the Opinion of this court, the assignments of error are not well taken, and it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.
TIMOTHY P. CANNON, J., concurs,
 COLLEEN MARY O'TOOLE, J., concurs. *Page 1